IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CV-199-FL

| | | |
|---|---|---|
| GREGORY S. MCINTYRE as Administrator of the Estate of Sara Nicole Wetherell, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| GEORGE MURPHY and C.R. ENGLAND, INC., | ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on defendants' motion for summary judgment (DE 23). The issues raised have been fully briefed and are ripe for adjudication. For the reasons that follow, the motion is denied.

## STATEMENT OF THE CASE

Plaintiff filed this action in Wilson County Superior Court on March 27, 2017, as administrator of the estate of Sara Nicole Wetherell ("Wetherell"), asserting claims against defendant C.R. England, Inc. ("England"), alleged owner of a truck which struck and killed Wetherell January 24, 2016, and George Murphy ("Murphy"), alleged driver of that truck, for negligence and gross negligence ("First Claim"). Plaintiff claims against defendant England as Murphy's employer under the doctrine of respondeat superior ("Second Claim"). Plaintiff also sought to advance claims against defendant England for negligent hiring, training and supervision of Murphy ("Third Claim"), and for negligence per se on account of defendant Murphy's alleged

violations of certain federal regulations.[1]

On April 27, 2017, defendant England removed this action from state court, invoking the court's diversity jurisdiction. It filed answer May 1, 2017, denying liability. On June 12, 2017, defendant Murphy filed answer also denying liability. Thereafter, the court entered its case management order, subsequently amended to allow for discovery until July 16, 2018, and filing of dispositive motions on or before August 13, 2018.

On August 13, 2018, defendants jointly moved for summary judgment. Defendants argue that plaintiff fails to make a prima facie case of negligence because defendants did not proximately cause Wetherell's injuries, and defendant Murphy did not violate a duty to Wetherell. Defendants also advance that Wetherell was contributorily negligent as a matter of law because of excessive speeding and failure to keep a reasonable lookout.

Defendants rely upon in support of motion expert deposition testimony and reports from David C. McCandless ("McCandless") (McCandless Dep. (DE 26-1); McCandless Report (DE 26-2)) and Stephanie W. Borzendowski ("Borzendowski") (Borzendowski Dep. (DE 26-3); Borzendowski Report (DE 26-4)); deposition testimony from Modesty Rivera ("Rivera') (Rivera Dep. (DE 26-5)) and Murphy (Murphy Dep. (DE 26-6)); and excerpts from defendant England's Driver Policy Manual ("Policy Manual") (DE 26-7).

Plaintiff argues in defense of motion that defendant Murphy's negligence was a proximate cause of Wetherell's injury, and that defendant Murphy violated a duty to mark and warn motorists of his overturned tractor-trailer under N.C. Gen. Stat. § 161(c). Plaintiff argues that Wetherell was not contributorily negligent, raising in defense of motion an issue of fact as to whether she was

---

[1] On May 22, 2017, defendant England and plaintiff stipulated pursuant to Federal Rule of Civil Procedure 41(a)(1) to the dismissal with prejudice of plaintiff's Third and Fourth Claims for relief.

speeding, and that she was not contributorily negligent because she would have been unable to perceive the truck through the glare of the sun even traveling at a lesser speed. Finally, plaintiff argues that, even if Wetherell was contributorily negligent, defendant Murphy's gross negligence defeats Wetherell's contributory negligence. Plaintiff relies upon deposition testimony from Murphy (Murphy Dep. (DE 29-1)), Tyrone James ("James") (James Dep. (DE 29-2)), Rivera (Rivera Dep. (DE 29-3)) and James Barnes ("Barnes") (Barnes Dep. (DE 29-4)); expert testimony and affidavits from Borzendowski ("Borzendowski Dep." (DE 29-5, 30); "Borzendowski Aff." (DE 29-6)) and McCandless ("McCandless Aff." (DE 29-7, 31)); excerpts from defendant England's Driver Policy Manual ("Policy Manual") (DE 29-8); and the affidavit of Deputy Anderson R. Seaman ("Seaman") (Seaman Aff. (DE 29-9, 32)).

In reply, defendants protest plaintiff's improper request for summary judgment without first making a motion. They contend among other things that plaintiff has not raised a genuine issue of material fact as to whether Wetherell was exceeding a safe speed under conditions existing. They offer a reply statement of material facts and place additional reliance upon certain deposition testimony.

## STATEMENT OF UNDISPUTED FACTS

The undisputed facts may be summarized as follows. On January 24, 2016, a tractor-trailer driven by defendant Murphy, an employee of defendant England, collided with a Dodge truck driven by Brandon Price ("Price"). (Statement of Facts (DE 25, 28) ¶¶ 1, 2).[2] The collision occurred at the intersection of U.S. Highway 301 South ("Highway 301") and Radford Road.

---

[2] "Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civil Rule 56.1(a)(2).

(Statement of Facts (DE 25, 28) ¶ 1).

Data from defendants' tractor-trailer shows that defendant Murphy was traveling at 60 miles per hour ("mph") with the cruise control set at 62 mph on approach to the intersection and did not brake until the approximate time of impact with Price's vehicle. (McCandless Aff. (DE 29-7, 31) ¶ 8.k.). The speed limit for traffic on Highway 301 was 45 mph. (See McCandless Aff. (DE 29-7, 31) ¶ 8.g.). Defendant Murphy experienced issues with sun glare as he traveled along the highway. (Statement of Additional Facts (DE 28, 31) ¶ 3; see McCandless Aff. (DE 29-7, 31) ¶ 8.u.). Two eyewitnesses told the sheriff's office that Price had a green light, and one eyewitness stated defendant Murphy had a red light. (Seaman Aff. (DE 29-9, 32) ¶¶ 19-22; see McCandless Aff. (DE 29-7) ¶¶ 8.h.-8.i.). The impact of defendant Murphy's vehicle and Price's vehicle colliding caused defendants' tractor-trailer to turn over on its left side with the underside of the trailer facing southbound travel on Highway 301. (McCandless Aff. (DE 29-7, 31) ¶¶ 8.m.-8.n.). Defendant Murphy was not injured and was coherent following the crash. (Murphy Dep. (DE 29-1) 82:23-83:8; James Dep. (DE 29-2) 80:9-18).

Defendant Murphy's tractor-trailer unit was equipped with an emergency accident kit that contained emergency cones/triangles. (Murphy Dep. (DE 29-1) 84:20-85:5; James Dep. (DE 29-2) 80:22-81:6). Barnes, an assistant fire chief who later arrived at the scene, testified that there was only a small leak of diesel fuel and no smoke coming from the tractor-trailer, and that no fire hazards were present on scene. (Barnes Dep. (DE 29-4) 22:4-23:4, 34:14-24). Barnes testified that there would have been no reason that defendant Murphy would not have been able to retrieve something from inside the tractor-trailer. (Barnes Dep. (DE 29-4) 34:15-24).

Defendant England required all their drivers be familiar with and adhere to all state, local,

and federal laws, including Federal Motor Carrier Safety Regulations ("FMCSR"). (Statement of Additional Facts (DE 28, 31) ¶ 15; Policy Manual (DE 29-7) at 1). Defendant Murphy was trained as a professional driver and realized FMCSR are the law for commercial drivers. (Murphy Dep. (DE 29-1) 21:7-22:23). FMCSR generally require that "whenever a commercial motor vehicle is stopped upon the traveled portion or the shoulder of a highway for any cause other than necessary traffic stops, the driver shall, as soon as possible, but in any event within 10 minutes, place [] warning devices . . . ." 49 C.F.R. § 392.22; see also N.C. Gen. Stat. § 20-161(c); 14B N.C. Admin. Code 7C.0101.[3] Similarly, defendant England's policy manual states drivers should "[s]ecure the scene. Put out triangles to prevent another accident." (Policy Manual (DE 26-7) at 1). Defendant Murphy was aware of the FMCSR and defendant's England's policy that emergency devices must be placed out on the highway within a certain time after a commercial truck becomes disabled. (See Statement of Additional Facts (DE 28, 31) ¶ 20). A tractor-trailer blocking lanes of travel on a roadway creates a more dangerous hazard to motorists traveling that roadway than in other places, such as the side of the road. (Murphy Dep. (DE 29-1) 121:4-122:7).

Approximately three minutes after defendant Murphy's tractor-trailer collided with Price's truck, Wetherell drove her Kia automobile into the overturned tractor-trailer. (McCandless Aff. (DE 29-7) ¶ 8.q.). Prior to her accident, Wetherell had been traveling southbound on Highway 301 for a period "on the order of minutes." (McCandless Dep. (DE 26-1) 28:19-29:3). The stretch of highway on which she was traveling was "relatively straight and level," and as noted above there was a posted speed limit of 45 mph in the vicinity of the accident. (McCandless Dep. (DE 26-1) 27:19-28:1, 29:12-14).

---

[3] The court takes judicial notice of 49 C.F.R. § 392.22, N.C. Gen. Stat. § 20-161(c), and 14B N.C. Admin. Code 7C.0101. See Fed. R. Evid. 201.

No warning cones had been placed during the three-minute interval between the two collisions. (Murphy Dep. (DE 26-6) 90:13-25; Seaman Aff. (DE 29-9, 32) ¶ 17). Plaintiff's human factors expert testifies that the placement of warning triangles would be perceptible during daylight hours and even in the presence of glare, a high contrast object is typically visible to drivers and would have served to alert Wetherell to a potential hazard in the roadway. (Borzendowski Aff. (DE 29-6, 30) ¶¶ 8.j.-8.1.).

The sun was setting directly in front of Wetherell's car, and Wetherell was driving into the sun the entire time she was heading southbound on Highway 301. (McCandless Dep. (DE 26-1) 28:11-18; Rivera Dep. (DE 26-5) 25:20-26:1; Borzendowski Aff. (DE 29-6, 30) ¶ 8.e.). As a result of the glare and the contrast of the overturned tractor-trailer, Wetherell's ability to detect and identify the hazard was impaired, and Wetherell did not initially perceive the overturned tractor-trailer. (Borzendowski Aff. (DE 29-6, 30) ¶¶ 8.f.-8.g.). The setting sun was a factor to the subject collision, as Wetherell's vehicle did not apply brakes until out of direct sun exposure. (McCandless Aff. (DE 29-7, 31) ¶¶ 8.x.). In the opinion of plaintiff's human factors expert, Wetherell "was unable to perceive that the tractor-trailer was blocking her lane of travel until it was too late for her to take any effective action to avoid striking it . . . . [T]he braking actions which she did take were well within the expected range for attentive drivers in similar situations." (Borzendowski Aff. (DE 29-6, 30) ¶¶ 8.m.).

Data from Wetherell's vehicle registered that her vehicle was traveling at a pre-accident speed of 59 mph. (McCandless Dep. (DE 26-1) 15:11-24, 22:14-21, 29:4-11). Data obtained from Wetherell's car also show she applied the brakes for about one second before the crash and that her speed on impact was approximately 40 mph. (McCandless Dep. (DE 26-1) 19:15-22, 22:17).

Seaman, a Wilson county deputy sheriff, testified that he witnessed the Wetherell's collision with defendant's tractor-trailer. (Seaman Aff. (DE 29-9, 32) ¶¶ 1, 4, 8, 14). According to Seaman, Wetherell's car "did not seem to slow down" and he believed based on his personal observation that "the Kia vehicle was traveling at a speed of 40 mph." (Seaman Aff. (DE 29-9, 32) ¶¶ 13, 15).

Additional facts pertinent to the instant motion will be discussed below.

## DISCUSSION

A.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id.

at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.      Analysis

The court analyzes below plaintiff's negligence and negligence per se claims, followed by defendant's contributory negligence defense, and finally plaintiff's gross negligence claim.

1.      Plaintiff's Negligence and Negligence Per Se Claims

"To state a claim for common law negligence, a plaintiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." Stein v. Asheville City Bd. Of Educ., 360 N.C. 321, 328 (2006). "A safety statute or a safety regulation having the force and effect of a statute creates a specific duty for the protection of others." Baldwin v. GTE S., Inc., 335 N.C.

544, 546 (1994) (internal citations omitted).  "A member of the class intended to be protected by a statute or regulation who suffers harm proximately caused by its violation has a claim against the violator."  Id. at 546-47 (internal citations omitted).

a.  Duty and Breach

North Carolina law provides that "[n]o person shall drive a vehicle on a highway or in a public vehicular area at a speed greater than is reasonable and prudent under the conditions then existing."  N.C. Gen. Stat. § 20-141(a).  In addition, "it shall be unlawful to operate a vehicle in excess of" the posted speed limit.  See N.C. Gen. Stat. § 20-141(b).  "Driving in excess of the lawful speed limit is negligence."  Dupree v. Batts, 276 N.C. 68, 73 (1969).

The law imposes a duty on motorists to "maintain a lookout" and "exercise reasonable care under the circumstances."  Ward v. Carmona, 368 N.C. 35, 38 (2015) (internal citations omitted).  "Unquestionably it is the duty of the driver of an automobile approaching a street intersection, when faced with a municipally maintained traffic signal showing red, to stop before entering."  Hyder v. Asheville Storage Battery Co., 242 N.C. 553, 556 (1955).

With respect to commercial motor carriers, federal and state law impose additional duties on drivers.  "[W]henever a commercial motor vehicle is stopped upon the traveled portion or the shoulder of a highway for any cause other than necessary traffic stops, the driver shall, as soon as possible, but in any event within 10 minutes, place [] warning devices" in the manner prescribed by the regulations.  49 C.F.R. § 392.22(b)(1); see N.C. Gen. Stat. § 20-161(c); 14B N.C. Admin. Code 7C.0101.  "The operator of any truck, truck tractor, trailer or semitrailer which is disabled upon any portion of the highway shall display warning devices of a type and in a manner as required under the rules and regulations of the United States Department of Transportation as adopted by the

Division of Motor Vehicles." N.C. Gen. Stat. § 20-161(c). "[A]n unexcused violation of N.C.G.S. 20-161 is negligence per se." Adams v. Mills, 312 N.C. 181, 188 (1984).

Data from defendants' tractor-trailer show that defendant Murphy was traveling at 60 mph with the cruise control set at 62 mph on approach to the intersection and did not brake until the approximate time of impact with Price's vehicle. (McCandless Aff. (DE 29-7, 31) ¶ 8.k.; see Statement of Additional Facts (DE 28, 36) ¶¶ 1, 3). Defendants do not present any evidence that contradicts this data. The speed limit for traffic on Highway 301 was 45 mph. (McCandless Aff. (DE 29-7, 31) ¶ 8.g.). Therefore, the uncontroverted evidence shows defendant Murphy was driving in excess of the lawful speed limit and was negligent per se at the time he collided with Price. Furthermore, two eyewitnesses told the sheriff's office that Price had a green light, and one eyewitness stated defendant Murphy had a red light. (Seaman Aff. (DE 29-9, 32) ¶¶ 19-22; see McCandless Aff. (DE 29-7) ¶¶ 8.h.-8.i.). From this evidence, the jury could also conclude that defendant Murphy breached his duty to maintain a reasonable lookout when he collided with Price's vehicle, because he failed to stop at the intersection and collided with Price's car when he did not have the right of way.

Federal and state regulations require that drivers of commercial vehicles place warning devices to alert motorists to their disabled vehicles "as soon as possible, but in any event within 10 minutes." 49 C.F.R. § 392.22(b)(1); see N.C. Gen. Stat. § 20-161(c); 14B N.C. Admin. Code 7C.0101. Approximately three minutes after defendant Murphy's tractor-trailer collided with Price's truck, Wetherell drove her Kia automobile into the overturned tractor-trailer. (McCandless Aff. (DE 29-7) ¶ 8.q.).

Whether defendant Murphy fulfilled his legal obligation to place out warning devices "as

soon as possible" is a genuine issue of material fact. Defendant Murphy's tractor-trailer unit was equipped with an emergency accident kit that contained emergency cones/triangles. (Murphy Dep. (DE 29-1) 84:20-85:5; James Dep. (DE 29-2) 80:22-81:6). Defendant Murphy was also trained as a professional driver, and per defendant England's policy knew of his obligations under FMCSR. (Murphy Dep. (DE 29-1) 21:7-22:23; Policy Manual (DE 29-8) at 1). Defendant England's policy manual indicates that drivers' first obligation is to "[s]ecure the scene. Put out triangles to prevent another accident." (Policy Manual (DE 26-7) at 1).

The facts concerning the aftermath of the crash further support an inference that defendant Murphy did not put out warning devices as soon as possible. Defendant Murphy was not injured and was coherent following the crash. (Murphy Dep. (DE 29-1) 82:23-83:8; James Dep. (DE 29-2) 80:9-18). Barnes also testified that no fire hazards were present on scene, and that there was no reason that defendant Murphy could not retrieve something from inside the tractor. (Barnes Dep. (DE 29-4) 22:4-23:4, 34:14-24).

Defendants argue that defendant Murphy's time under FMCSR to place cones "had not yet expired." (Def. Mem. (DE 24) at 8). Defendants misread § 392.22 as allowing any placement of cones within 10 minutes to satisfy the requirement under the regulations. Federal and state law require that warning devices be placed "as soon as possible, but in any event within 10 minutes." 49 C.F.R. § 392.22(b)(1); see N.C. Gen. Stat. § 20-161(c); 14B N.C. Admin. Code 7C.0101. Therefore, in at least some situations, warning devices must be placed in fewer than 10 minutes to protect against the imminent threat of accidents.

The court will not undertake to decide if failing to place warning devices out within three minutes after a crash is negligence per se under the facts of this case. Such a determination is the

province of the jury. Therefore, plaintiff has presented sufficient evidence of duty and breach under theories of negligence and negligence per se to defeat defendant's motion.

        b.       Proximate Cause

The court turns to whether plaintiff establishes a genuine issue of material fact as to whether defendants proximately caused Wetherell's injuries. Proximate cause means "a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed." Ward, 368 N.C. at 37 (internal citation omitted). "Foreseeability of injury is thus an essential element of proximate cause, and this is true even [where] the act complained is a violation of a safety statute." Adams, 312 N.C. at 193. "Proximate cause is an inference of fact to be drawn from other facts and circumstances. Only when the facts are all admitted and only one inference may be drawn from them will the court declare whether an act was the proximate cause of an injury or not." Id.

"There may be two or more proximate causes of an injury." Batts v. Faggart, 260 N.C. 641, 644 (1963). "Where the second actor does not become apprised of the existence of a potential danger created by the negligence of an original tort-feasor until his own negligence, added to that of the existing perilous condition, has made the accident inevitable, the negligent acts of the two tort-feasors are contributing causes and proximate factors in the happening of the accident." Adams, 312 N.C. at 194. "In order to insulate the negligence of one party, the intervening negligence of another must be such as to break the sequence or causal connection between the negligence of the first party and the injury, so as to exclude the negligence of the first party as one of the proximate causes of the injury." Id. at 193.

Here, plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to whether defendants' actions proximately caused Wetherell's injuries. It is undisputed that defendant Murphy generally understood a tractor-trailer blocking lanes of travel on a roadway creates a more dangerous hazard to motorists traveling that roadway than in other places, such as the side of the road. (Statement of Additional Facts (DE 28, 31) ¶ 19; Murphy Dep. (DE 29-1) 121:4-122:7). Both of plaintiff's experts also opine that defendant Murphy's overturned vehicle posed a hazard to other motorists on the roadway. (See Borzendowski Aff. (DE 29-6, 30) ¶ 8.h.; McCandless Aff. (DE 29-7, 31) ¶ 8.bb.). As further explained by plaintiff's human factors expert, "[t]he hazard violates a motorists' expectations regarding vehicles moving in front of them. The common expectation is that vehicles in front of us on a highway are moving at or about the same speed as traffic . . . ." (Borzendowski Aff. (DE 29-6, 30) ¶ 8.h.).

Additionally, plaintiff presents raises a genuine issue as to whether defendant Murphy failing to put out cones proximately caused her injury. Borzendowski testifies that placement of warning triangles would be perceptible during daylight hours and even in the presence of glare, a high contrast object is typically visible to drivers and would have served to alert plaintiff to a potential hazard in the roadway. (Borzendowski Aff. (DE 29-6, 30) ¶¶ 8.j.-8.1.). Borzendowski also opines that "[t]riangles and cones used in this context are designed to be effective warning devices." (Borzendowski Aff. (DE 29-6, 30) ¶ 8.1.). Although Borzendowski does not expressly state what makes a warning device "effective," a reasonable factfinder could infer an effective warning device allows motorists to recognize and avoid hazards.

The evidence in the record thus shows it is foreseeable that an overturned tractor-trailer in the middle of the highway may inflict injury on motorists. The evidence also supports a reasonable

inference that, but for defendant's tractor-trailer being overturned, Wetherell would not have crashed. Finally, there is sufficient evidence for a reasonable trier of fact to find a continuous sequence between defendant Murphy's collision with Price and Wetherell's subsequent collision with defendants' tractor-trailer around three minutes later.

Defendants argue that <u>Williams v. Smith</u> and <u>McNair v. Boyette</u> support the conclusion that Wetherell's negligence was an intervening cause that breaks the chain of proximate causation. Defendants' reliance on <u>Williams</u> and <u>McNair</u> is misplaced. In each of those cases, a third party actor, rather than a party to the first collision, was the force that caused the second collision. <u>See</u> <u>Williams v. Smith</u>, 68 N.C. App. 71, 72-73 (1984) (finding motorist causing a first collision did not proximately cause injuries where second motorist hit officer directing traffic twenty to forty-five minutes later); <u>McNair v. Boyette</u>, 15 N.C. App. 69, 70-71 (1972) (holding motorist causing first collision did not proximately cause plaintiff's injuries where another motorist struck plaintiff while he was directing traffic). In the instant case, there is no act by a third party that breaks the chain of causation. Indeed, a reasonable trier of fact could conclude it is because of the first collision that defendant was involved in the second collision, which would not break the causal chain but instead solidify it.

Similarly, defendants argue that they did not proximately cause Wetherell's injuries because they could not foresee plaintiff's alleged speeding or not maintaining a reasonable lookout. In <u>Adams</u>, the North Carolina Supreme Court considered whether defendant speeding and driving into sun glare proximately caused plaintiff's injuries as a matter of law. <u>See</u> 312 N.C. at 185-86. The North Carolina Supreme Court expressly stated that it is for the factfinder to determine if "continuing to drive . . . while blinded by the bright setting sun was reasonably unforeseeable . . .

."  <u>Adams</u>, 312 N.C. at 195.  The court reasoned that while the law does not require a defendant to anticipate specific acts of negligence, "[i]t does . . . fix [defendant] with notice of the exigencies of traffic, and the must take into account the prevalence of that 'occasional negligence which is one of the incidents in human life.'"  <u>Id.</u> (citing <u>Hairston v. Alexander Tank & Equipment Co.</u>, 310 N.C. 227, 234 (1984)).  Defendants attempt to distinguish <u>Adams</u> in several ways, such as the presence of a single accident, plaintiff's truck being voluntarily parked in the road, the inapplicability of the statute in <u>Adams</u> to this case, and the length of time that plaintiff was speeding and driving in sun glare.  (Def. Reply (DE 35) at 4).  None of defendants' distinctions persuade the court that <u>Adams</u> is inapplicable to the instant case.  Accordingly, defendants have failed to show as a matter of law that Wetherell's actions were unforeseeable.

Finally, defendants argue that they did not proximately cause Wetherell's injuries through their negligence because plaintiff has not proved that defendant Murphy's failure to place warning devices proximately caused Wetherell's injuries.  Defendants primarily rely upon Borzendowski's expert testimony where she stated that, assuming a number of factors posited by defense counsel involving the reflective nature of defendants' warning devices and illumination of the road, she could not "say for certain whether or not [Wetherell] would have perceived those warning devices with enough time to avoid impacting the object."  (<u>See</u> Borzendowski Dep. (DE 26-3) 51:4-16, 51:24-52:2).  However, Borzendowski has also stated that placement of warning devices "would have served to alert [] Wetherell to the presence of a potential hazard in or along the roadway" and that "triangles or cones used in this context are designed to be effective warning devices under day or night conditions."  (<u>See</u> Borzendowski Aff. (DE 29-6, 30) ¶¶ 8.j.-8.m.).

The resolution of such inconsistency is a credibility determination appropriately left to the

jury.  Moreover, the court need not address this issue at summary judgment because a reasonable trier of fact could find two other acts — defendant Murphy speeding and defendant Murphy running the red light — proximately caused Wetherell's injuries by overturning defendants' tractor-trailer and creating a hazardous condition in the roadway.  Accordingly, defendants have failed to show that they are entitled to summary judgment on plaintiff's claims of negligence and negligence per se.

     2.     Contributory Negligence

"Contributory negligence, as its name implies, is negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant alleged in the complaint to produce the injury of which the plaintiff complains."  Jackson v. McBride, 270 N.C. 367, 372 (1967).  In order to establish contributory negligence, defendant must prove "(1) that plaintiff failed to exercise proper care in the performance of a legal duty which plaintiff owed to defendant under the circumstances in which they were placed; and (2) that such negligent breach of duty was a proximate cause of the injury suffered."  Adams, 312 N.C. at 187.  Defenses of contributory negligence and contributory negligence per se are analyzed under the same standards as negligence claims.  See Sebastian v. Horton Motor Lines, 213 N.C. 770, 773-74 (1938).  "In this state, a plaintiff's contributory negligence is a bar to recovery from a defendant who commits an act of ordinary negligence."  Sorrells v. M.Y.B. Hosp. Ventures of Asheville, 332 N.C. 645, 648 (1992).

Defendant argues that Wetherell was contributorily negligent by "(1) driving at a speed 14 miles per hour in excess of the posted limit; and (2) proceeding without reasonable care into sun glare that obscured her vision." (Def. Mem. (DE 24) at 10).  The court analyzes each of these claims in turn.

The record discloses evidence from which a reasonable trier of fact may infer that Wetherell was driving 59 mph on a road with a 45 mph speed limit. The data from Wetherell's airbag monitoring system registered that Wetherell's car was traveling at a pre-accident speed of 59 mph. (McCandless Dep. (DE 26-1) 15:11-24, 22:14-21, 29:4-11). Data obtained from Wetherell's car also showed she applied the brakes for about one second before the crash and that her speed on impact was approximately 40 mph. (McCandless Dep. (DE 26-1) 19:15-22, 22:17). Additionally, McCandless states that he has no reason to question the accuracy of the data. (McCandless Dep. (DE 26-1) 15:11-24). McCandless also observed that no skid marks appeared on the road. (McCandless Aff. (DE 29-7, 31) ¶ 8.s.).

However, plaintiff also offers the testimony of Seaman, who states that, based on his personal observations of the crash, Wetherell's car "did not seem to slow down" and "was traveling at a speed of 40 mph." (Seaman Aff. (DE 29-9, 32) ¶¶ 13, 15). Defendant argues that Seaman's testimony is consistent with the airbag data and expert opinion in this case, because Seaman does not state when or for how long before the collision he saw Wetherell traveling at 40 mph. (Def. Reply (DE 35) at 3). While that is one reasonable inference that can be drawn from Seaman's testimony, the reasonable inference most favorable to plaintiff is that Seaman's testimony directly contradicts the expert testimony of McCandless. Seaman testified that he witnessed Wetherell's car drive through the southbound intersection prior to making a U-turn at the intersection of Highway 301 and Radford Road, but after he observed defendants' tractor-trailer overturned driving by on the opposite side of the highway. (Seaman Aff. (DE 29-9, 32) ¶¶ 10-12). Seaman also testified that Wetherell's vehicle did not seem to slow down. (Seaman Aff. (DE 29-9, 32 ¶ 13). These statements implicitly show when and for how long Seaman observed the crash. They also contradict

McCandless' testimony that Wetherell decreased her speed by approximately 19 mph before the accident. (McCandless Dep. (DE 26-1) 22:2-21).

Taken together with Seaman's testimony that he observed Wetherell driving approximately 40 mph, (Seaman Aff. (DE 29-9, 32) ¶ 15), a reasonable factfinder could conclude from Seaman's testimony that McCandless' testimony is erroneous, and Wetherell was driving approximately 40 mph before the accident. Consequently, plaintiff raises a genuine issue of material fact as to whether Wetherell was driving in excess of the speed limit.

Turning to the issue of whether Wetherell was driving at an unreasonable speed given the conditions or failing to maintain a reasonable lookout, evidence shows that Wetherell was driving with sun glare. Both experts testified that Wetherell's ability to detect defendant's tractor-trailer was impaired by sun glare. (See Borzendowski Aff. (DE 29-6, 30) ¶¶ 8.e.-8.g.; McCandless Aff. (DE 29-7, 31) ¶¶ 8.u.-8.v.). However, as noted above there is a genuine issue of material fact as to the speed Wetherell was actually driving. Moreover, plaintiff presents evidence that proceeding in spite of sun glare was reasonable. Borzendowski testified that "the braking and actions which [Wetherell] did take were well within the expected range for attentive drivers in similar situations." (Borzendowski Aff. (DE 29-6, 30) ¶ 8.m.). Rivera testified that while she was riding in Wetherell's car, the sun in front of the car was "very bright" but not "extremely bright." (Rivera Dep. (DE 26-5) 25:20-26:20). Viewing the evidence in the light most favorable to plaintiff, defendant has not proven as a matter of law that Wetherell breached her statutory duty to maintain a reasonable speed under the exigencies then existing or her common law duty to maintain a reasonable lookout. See N.C. Gen. Stat. § 20-141(a); Ward, 368 N.C. at 38.

Defendants rely upon three cases to support their argument that defendant breached a duty

by failing to maintain a reasonable lookout or reduce speed. (See Def. Mem. (DE 24) at 11-15 (citing Bradham v. McLean Trucking Co., 243 N.C. 708, 710-11 (1956); Riggs v. Gulf Oil Corp., 228 N.C. 774, 776-77 (1948); Sibbitt v. R. & W. Transit Co., 220 N.C. 702, 703 (1942)). However, these cases are inapplicable here. In both Riggs and Sibbitt, the collisions occurred during the early morning and at nighttime, when no sunlight was present. Riggs, 228 N.C. at 777; Sibbitt, 220 N.C. at 703. The parties agree that the disputed collision occurred in daylight, and defendants' case turns on an excess of sunlight. The obligation to maintain a lookout or reasonable speed differs in daytime driving conditions. See Black v. Gurley Mill. Co., 257 N.C. 730, 734-35 (1962) (daytime conditions support finding of contributory negligence for driving too closely); see also Martishius v. Carolco Studios, Inc., 355 N.C. 465, 480 (2002) (holding sun glare may support a jury finding of contributory negligence in operating mobile boom lift equipment).

Additionally, in Williams the court distinguished Bradham because it involved a case where there was a "sudden and unexpected envelopment by fog, which would dissipate momentarily . . . ." Williams v. Tucker, 259 N.C. 214, 218 (1963). In Williams, the court sent the case to the jury to decide whether plaintiff operating his vehicle at 50 mph in a "widespread and dense fog" was contributorily negligent. Id. at 217. The factual circumstances of this case are analogous to Williams, rather than Bradham. The positioning of the sun at a certain time of day is neither sudden nor unexpected, and the reach of sunlight is fairly characterized as widespread. Therefore, the issue of if Wetherell should have reduced speed or stopped in this instance because of sun glare is an issue for the jury. Where defendants have not established a violation of a statute or the breach of a duty as a matter of law, the court does not reach the issue of whether Wetherell proximately caused her own injuries.

3.      Gross Negligence

Plaintiff asks the court to grant summary judgment on the issue of defendants' alleged gross negligence in plaintiff's brief in opposition to defendants' motion for summary judgment.

A motion must "(A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought." Fed. R. Civ. P. 7(b)(1). "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Given their heavy case loads, district courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied . . . ." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008).

Motions for summary judgment were required to be filed in this matter by August 13, 2018. (Order (DE 20) at 2). Plaintiff did not timely file any motion for summary judgment by this deadline, and plaintiff has not explained why there is good cause to allow any late filing. In addition to being untimely, plaintiff's purported motion for summary judgment, embedded as a plea for relief responding in opposition to defendants' motion, violates Local Civil Rules 7.1, 10.1 and 56.1 with respect to the requirements for motion practice in this district, and in particular motion practice for seeking summary judgment.

Accordingly, plaintiff's prayer for summary judgment on the issue of gross negligence is not

a motion properly before this court, and the issue will be submitted to the jury.

## CONCLUSION

Based on the foregoing, the court DENIES defendants' motion for summary judgment. (DE 14). Where claims remain for trial, in accordance with the court's case management order entered July 24, 2017 and amended February 14, 2018, this case now is ripe for entry of an order governing deadlines and procedures for final pretrial conference and trial. The parties are DIRECTED to confer and file within **14 days** from the date of this order a joint status report informing of 1) estimated trial length; 2) particular pretrial issues which may require court intervention in advance of trial, if any; and 3) at least three suggested alternative trial dates. In addition, the parties shall specify if they wish to schedule a court-hosted settlement conference or additional alternative dispute resolution procedures in advance of trial, and if so the date for completion of such.

SO ORDERED, this the 20th day of March, 2019.


LOUISE W. FLANAGAN
United States District Judge